1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   JUDY LEWIS,

11                         Plaintiff,

12              v.

13   CHASE HOME FINANCE LLC,

14                         Defendant.

CASE NO. C11-0088JLR

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION TO
DISMISS

15        This matter comes before the court on Defendant Chase Home Finance LLC's

16   ("Chase") motion to dismiss Plaintiff Judy Lewis' first amended complaint pursuant to

17   Federal Rule of Civil Procedure 12(b)(6) (Dkt. # 26).  Ms. Lewis brings this putative

18   class action for breach of contract; violations of the Washington State Consumer

19   Protection Act ("CPA"), RCW 19.86, *et seq.*; and unjust enrichment related to certain

20   amounts she paid to Chase in connection with paying off her home loan.  Having

21   considered the briefing of the parties, all related filings, and the relevant law, and having

22   heard oral argument on December 2, 2011, the court GRANTS in part and DENIES in

part Chase's motion to dismiss (Dkt. # 26).  The court further GRANTS Ms. Lewis leave

to file a second amended complaint consistent with this order.

## I.    BACKGROUND

Chase is an originator and servicer of home loans.  (Am. Compl. (Dkt. # 24) ¶ 7.)

Ms. Lewis had a home loan serviced by Chase that was secured by a Deed of Trust.  (*Id.*

¶ 10-11; *see also* Koon Decl. Ex. B ("Deed of Trust").)[1]  The Deed of Trust secured to

the lender, QPoint Home Mortgage Loans—Yakima, LLC, "(i) the repayment of the

Loan, and all renewals, extensions and modifications of the Note; and (ii) the

performance of Borrower's covenants and agreements under this Security Instrument and

the Note."  (Deed of Trust at 2.)  The covenant under the Deed of Trust that is most

relevant to the instant action states:

> **Reconveyance.**    Upon payment of all sums secured by this Security
> Instrument, Lender shall request Trustee to reconvey the Property and shall
> surrender this Security Instrument and all notes evidencing debt secured by
> this Security Instrument to Trustee.   Trustee shall reconvey the Property
> without warranty to the person or persons legally entitled to it.  *Such person
> or persons shall pay any recordation costs* and the Trustee's fee for
> preparing the reconveyance.

---

[1] The Deed of Trust is not attached to Ms. Lewis's first amended complaint but it is
incorporated by reference.  A document "may be incorporated by reference into a complaint if
the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's
claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Marder v. Lopez*,
450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint
'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the
plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)
motion.").  Here, Ms. Lewis's first amended complaint necessarily relies on the Deed of Trust
because it refers to the document (Am. Compl. ¶ 10), the document is central to Ms. Lewis's
claim (*see id.* ¶¶ 28-30), and no party has questioned the authenticity of the copy attached to the
Koon Declaration.  Accordingly, the court may treat the Deed of Trust as "part of the complaint,
and thus may assume that its contents are true for purposes of a motion to dismiss under Rule
12(b)(6)."  *Ritchie*, 342 F.3d at 908.

ORDER- 2

(*Id.* ¶ 23 (bold in original, italics added); Am. Compl. ¶ 10.)

Ms. Lewis alleges that in February 2010, she decided to refinance her home loan and needed to know the amount owed thereon.  (Am. Compl. ¶¶ 11, 12.)  She further alleges that on February 6, 2010, Chase provided her with a Payoff Statement ("the Payoff Statement") for the loan.  (Am. Compl. ¶ 12; *see also* Koon Decl. Ex. A ("Payoff Statement").)[2]  The Payoff Statement included the following "Breakdown of Amount Owed":

| | | | |
|---|---|---|---|
| Principal Balance: | $98,587.99 | Recording Fee: | $77.00 |
| Interest . . . : | $1,111.37 | | |
| Escrow Advance Balance: | $334.86 | | |
| Private Mortgage Insurance: | $136.38 | | |

**Total Amount Secured by Mortgage:**              **$100,247.60**

| | |
|---|---|
| Facsimile Fees: | $30.00 |
| Reconveyance Fee: | $45.00 |

**Total Amount Owed Including Service Fees:**              **$100,322.60**

(Payoff Statement (bold in original).)  The Payoff Statement further stated:

> The above figures are subject to final verification upon receipt of the payoff remittance by Chase.  Except where prohibited, Chase reserves the right to adjust the above figures and refuse any funds which are insufficient to pay the Total Amount Secured by the Mortgage for any reason . . . .  If the payoff remittance is insufficient to pay the Total Amount Secured by the Mortgage, Chase will withdraw funds from the borrower(s) escrow

---

[2] Like the Deed of Trust, the Payoff Statement was not attached to the amended complaint, but it is incorporated by reference because it refers to the Payoff Statement (Am. Compl. ¶¶ 14, 15, 17, 19), the document is central to Ms. Lewis's claims (*see id.* ¶¶ 34-36), and no party has questioned the authenticity of the copy attached to the Koon Declaration.  *See Marder*, 450 F.3d at 448 (setting forth the elements of incorporation by reference); *see also Ritchie*, 342 F.3d at 908.

account, if available, to complete such payoff.  **If sufficient funds are not in the escrow to complete such payoff, the check will be returned with a new quote.**  Insufficient payoff funds remitted via wire transfer will be returned and a new quote will need to be ordered.

(*Id.* (bold in original); Am. Compl. ¶ 15.)

Ms. Lewis paid off her home loan, including the $77 recording fee ("the Recording Fee") and the $30 facsimile fee ("the Facsimile Fee").  (Am. Compl. ¶¶ 16-17.)  The Recording Fee included a $63 fee to record the Deed of Reconveyance, and a $14 fee to record a Substitution of Trustee ("the Substitution of Trustee Fee").  (*Id.* ¶¶ 14, 16.)  On March 19, 2010, Chase recorded or caused to be recorded a "Substitution of Trustee and Deed of Reconveyance," and paid the $77.00 fee.  (Mot. (Dkt. # 26) Ex. 1.)[3]

On October 19, 2010, Ms. Lewis sent a letter to QPoint and Chase complaining about the $14 Substitution of Trustee Fee and the Facsimile Fee.  (Am. Compl. ¶ 19.)  After receiving no response from Chase (*id.*), Ms. Lewis initiated the instant action on December 15, 2010, in King County Superior Court (Notice of Removal (Dkt. # 1)).  Chase timely removed the action to this court on January 18, 2011.  (*See id.*)

On March 16, 2011, Ms. Lewis filed an amended complaint.  (Am. Compl.)  She alleges that Chase breached the Deed of Trust and violated the CPA by charging her the Substitution of Trustee Fee.  (*Id.* ¶¶ 28-33.)  Ms. Lewis also alleges that Chase violated

---

[3] The court takes judicial notice of the "Substitution of Trustee and Deed of Reconveyance" because it is a public record.  *See, e.g.*, *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." (quotation omitted)); *Fimbres v. Chapel Mort. Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of substitution of trustee because it was a public record).

1    the CPA by including the Facsimile Fee "as part of the 'Total Amount Owed' on its loan

2    Payoff Statements without any explanation or disclaimer that payment of such fees is not

3    necessary to secure release and/or reconveyance of borrowers' mortgages or deed of

4    trust" because this practice has the capacity to deceive reasonable consumers into

5    believing that they must pay the fee to obtain a release of the mortgage or a reconveyance

6    of the deed of trust.  (*Id.* ¶¶ 34-35.)  Finally, Ms. Lewis alleges that Chase was unjustly

7    enriched by charging and retaining the Substitution of Trustee Fee and the Facsimile Fee.

8    (*Id.* ¶ 37.)

9        Chase has moved to dismiss Ms. Lewis's amended complaint in its entirety.  (*See*

10   *generally* Mot.)

**II.    DISCUSSION**

12   **A. Motion to Dismiss Standard**

13       When considering a motion to dismiss under Federal Rule of Civil Procedure

14   12(b)(6), the court construes the complaint in the light most favorable to the non-moving

15   party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

16   2005).  The court must accept all well-pleaded allegations of material fact as true and

17   draw all reasonable inferences in favor of the plaintiff.  *See Wyler Summit P'ship v.*

18   *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court, however, need

19   not accept as true a legal conclusion presented as a factual allegation.  *Ashcroft v. Iqbal*,

20   129 S. Ct. 1937, 1949-50 (2009).  Moreover, "[i]f the allegations of the complaint are

21   contradicted by evidence that is properly before the Court . . . the latter controls."  *Just*

22   *Enters., Inc. v. Phillips & Webster, PLLC*, No. C07-1622RSL, 2008 WL 351020, at *1

1  (W.D. Wash. Feb. 7, 2008); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293,

2  1295-96 (9th Cir. 1998); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

3  2001).

4  "To survive a motion to dismiss, a complaint must contain sufficient factual

5  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*,

6  129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see*

7  *also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has

8  facial plausibility when the plaintiff pleads factual content that allows the court to draw

9  the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

10  129 S. Ct. at 1949. Dismissal under Rule 12(b)(6) can be based on the lack of a

11  cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

12  theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). If the

13  court finds that dismissal is warranted, the court should grant the plaintiff leave to amend

14  unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

15  **B. Count I - Breach of Deed of Trust with Respect to the Recording Fee**

16  Chase argues that dismissal of Ms. Lewis's breach of contract claim is warranted

17  because (1) contrary to Ms. Lewis's allegations, the Deed of Trust authorized Chase to

18  collect the Substitution of Trustee Fee; and (2) the voluntary payment doctrine bars Ms.

19  Lewis's claim. (Mot. at 9-11, 16-17.) For the reasons explained below, the court denies

20  Chase's motion to dismiss Ms. Lewis's breach of contract claim.

21

22

### 1.  Breach of Contract

Under Washington law,[4] courts interpret contracts according to the objective manifestation of the parties.  *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005).  "Under this approach, [the court] attempt[s] to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties."  *Id.*  Courts "impute an intention corresponding to the reasonable meaning of the words used," and words are given their "ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent."  *Id.*  Courts "do not interpret what was intended to be written but what was written."  *Id.*; *see also Warner v. Design & Build Homes, Inc.*, 114 P.3d 664 (Wash. Ct. App. 2005) ("This court not only should not, but it cannot, rewrite the clear agreement of the parties." (quoting *Frickel v. Sunnyside Enters., Inc.*, 725 P.2d 422, 426 (Wash. 1986)).

Where a contract is unambiguous, the court interprets it as a matter of law. *Paradiso v. Drake*, 143 P.3d 859, 861 (Wash. Ct. App. 2006).  "A contract is ambiguous if its terms are uncertain or they are subject to more than one meaning."  *Dice v. City of Montesano*, 128 P.3d 1253, 1257 (Wash. Ct. App. 2006).  "A provision is not ambiguous simply because the parties suggest opposing meanings."  *Id.*  Where a contract is ambiguous, however, the court construes the ambiguities against the drafter.  *Mendez v. Palm Harbor Homes, Inc.*, 45 P.3d 594, 602 (Wash. Ct. App. 2002).

---

[4] The Deed of Trust recites that it is governed by Washington law and federal law.  (Deed of Trust ¶ 16.)  In their briefing, the parties rely primarily on Washington case law.

1    Chase relies on two provisions in the Deed of Trust to support its position that it

2  properly collected the Substitution of Trustee Fee from Ms. Lewis.  First, Chase cites

3  paragraph 23 of the Deed of Trust, which states:

4      **Reconveyance.**  Upon payment of all sums secured by this Security
       Instrument, Lender shall request Trustee to reconvey the Property and shall
5      surrender this Security Instrument and all notes evidencing debt secured by
       this Security Instrument to Trustee.  Trustee shall reconvey the Property
6      without warranty to the person or persons legally entitled to it.  *Such person
       or persons shall pay any recordation costs* and the Trustee's fee for
7      preparing the reconveyance.

8  (Deed of Trust ¶ 23 (bold in original, italics added).)  Chase contends that the phrase "any

9  recordation costs" means any recordation costs in connection with and to effectuate

10  reconveyance, and that the Substitution of Trustee Fee was assessed in connection with

11  reconveyance.[5]  Ms. Lewis asserts that "any recordation costs" means only the costs

12  necessary for recording the reconveyance, and that the Substitution of Trustee Fee was

13  unnecessary.[6]  (Resp. (Dkt. # 6) at 7.)  In the alternative, Ms. Lewis maintains that the

14  Deed of Trust is ambiguous regarding who must pay the Substitution of Trustee Fee and

15  that this ambiguity must be construed against Chase as the drafter.  (*Id.* at 8.)

16    Reading paragraph 23 as a whole, the court concludes that the parties objectively

17  and unambiguously manifested their intent that Ms. Lewis would pay any recordation

18

19    [5] Chase's counsel clarified this argument during oral argument.

20    [6] Ms. Lewis also argues that paragraph 23 does not authorize collection of the
   Substitution of Trustee Fee because paragraph 24, which addresses substitutions of trustees, is
21  silent as to who must pay any resulting recording fees.  (Resp. at 7.)  The court, however, is not
   persuaded that paragraph 24's failure to address recording fees means that liability for the
22  Substitution of Trustee Fee cannot be provided elsewhere in the Deed of Trust.

ORDER- 8

1  costs associated with reconveyance.  "Any recordation costs" is an expansive phrase;

2  however, its placement in the paragraph addressing reconveyance limits it to this context.

3  Interpreting the phrase to mean any recordation costs associated with reconveyance

4  recognizes both the specific contractual language and the overall context, without reading

5  terms into the contract that are not present.[7]  In light of this interpretation, the court

6  declines to dismiss Ms. Lewis' breach of contract claim; she has alleged that the Deed of

7  Trust did not authorize Chase to charge her the Substitution of Trustee Fee, and the

8  court's interpretation of the contract language does not foreclose such a claim.

9       The court recognizes that two Washington State Superior Court judges have come

10  to a different conclusion when considering identical language in a deed of trust on a

11  motion to dismiss.  (*See* Berger Decl. (Dkt. #31) Ex. 1 (Partial transcript from hearing in

12  *Gardner v. GMAC Mortgage, Inc.*, No. 10-2-36902-3 SEA (King Co. Super. Ct. Mar. 18,

13  2011)); Notice of Supplemental Authority (Dkt. # 38) Ex. 1 (Transcript from hearing in

14  *Kazman v. PNC Fin. Servs. Group, Inc.*, No. 11-2-20321-2 SEA (King Co. Super. Ct.

15  Oct. 7, 2011) ("*Kazman* Transcript")).)  The judges in *Gardner* and *Kazman* both

16  concluded that the deeds of trust were ambiguous.  The judge in *Kazman* reasoned that

17  "there is an ambiguity in terms of whether the recording costs, what is contemplated in

18  ——————————————

19       [7] Ms. Lewis maintains that it would be unreasonable and unjust to require her to pay for
recording costs that do not benefit her in any way.  (Resp. at 8.)  The court, however, is bound by

20  the objective manifestation of the parties, and paragraph 23 contains no language that restricts
the recording costs for which Ms. Lewis is liable to those that benefit her.

21       Ms. Lewis also argues that Chase breached the Deed of Trust by improperly substituting

22  the trustee.  (*Id.* at 12-13.)  There are no factual allegations in the amended complaint, however,
supporting such a breach of contract theory.

1    that whole paragraph is the recording costs of the instrument reconveying to the borrower

2    or, as the defendant argues, any recording costs of any instrument during the life of the

3    loan." (*Kazman* Transcript at 38.)

4         The court respectfully disagrees with this conclusion.  To interpret paragraph 23 as

5    applying to any recording costs during the life of the loan would ignore the fact that the

6    phrase "any recording costs" is written into the paragraph regarding reconveyance.  On

7    the other hand, to interpret paragraph 23 as assigning liability for "only" the recording

8    costs "necessary" to reconveyance, as Ms. Lewis posits, would improperly add two key

9    words into the contract—"only" and "necessary"—which are at odds with the broad

10   scope of the phrase "*any* recordation costs."  *See Hearst Commc'ns*, 115 P.3d at 267

11   (noting that courts interpret what was written, not what was allegedly intended to be

12   written).  As such, paragraph 23 is not subject to more than one reasonable meaning.

13        In addition to relying on paragraph 23, Chase argues that paragraph 14 of the

14   Deed of Trust authorized it to collect the Substitution of Trustee Fee from Ms. Lewis.

15   Paragraph 14 provides in relevant part, "[T]he absence of express authority in this

16   Security Instrument to charge a specific fee to Borrower shall not be construed as a

17   prohibition on the charging of such a fee."  (Deed of Trust ¶ 14.)  Chase asserts that

18   courts have consistently dismissed similar breach of contract claims based on payoff fees

19   not expressly authorized or prohibited by deeds of trust.  (Mot. at 11 n.3 (citing *Davis v.*

20   *Homecomings Fin.*, No. C05-1466RSL, 2006 WL 2927701, at *5 (W.D. Wash. Oct. 10,

21   2006); *Cappellini v. Mellon Mortg. Co.*, 991 F. Supp. 31, 39-40 (D. Mass. 1998);

22

1   *Westfall v. Chase Lincoln First Bank, N.A.*, 685 N.Y.S.2d 181, 182 (N.Y. App. Div.

2   1999)).)

3         The court concludes that paragraph 14 does not so unambiguously authorize Chase

4   to collect the Substitution of Trustee Fee from Ms. Lewis—without her prior knowledge

5   or consent—that Ms. Lewis' breach of contract claim must fail at the motion to dismiss

6   stage.  The cases upon which Chase relies were decided on motions for summary

7   judgment—not motions to dismiss—and are factually distinguishable because they

8   involve fax fees that were charged after the plaintiff specifically requested to receive

9   materials via fax.  *See Davis*, 2006 WL 2927701, at *2-3; *Cappellini*, 991 F. Supp. at 39;

10  *Westfall*, 685 N.Y.S.2d at 182.  Here, by contrast, it does not appear that Chase

11  performed a special service for Ms. Lewis when it recorded the substitution of trustee but

12  it nevertheless charged her the resulting fee without her knowledge or consent.  In sum,

13  the court denies Chase's motion to dismiss Ms. Lewis's breach of contract claim.

14      **2.  Voluntary Payment Doctrine**

15        Chase asserts that even if Ms. Lewis has stated a viable claim for breach of

16  contract, it should be dismissed because she voluntarily paid the Substitution of Trustee

17  Fee.  (Mot. 16.)  Under the affirmative defense of voluntary payment, "money voluntarily

18  paid under a claim of right to the payment, and with full knowledge of the facts by the

19  person making the payment, cannot be recovered back on the ground that the claim was

20  illegal, or that there was no liability to pay in the first instance."  *Indoor Billboard/Wash.,*

21  *Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 23 (Wash. 2007) (quoting *Speckert v.*

22  *Bunker Hill Ariz. Mining Co.*, 106 P.2d 602, 608 (Wash. 1940)).  "Payments are

ORDER- 11

1   considered involuntarily made under the doctrine if the payor lacked knowledge of the

2   applicable fees or made the payment as a result of fraud, duress, or compulsion." *Davis*,

3   2006 WL 2927701, at *4 n.3 (citing *Speckert*, 106 P.2d at 608-09). "Ordinarily

4   affirmative defenses may not be raised by motion to dismiss, . . . but this is not true when

5   . . . the defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377,

6   1378 (9th Cir. 1984) (internal citation omitted). Here, the factual record is too

7   undeveloped for the court to apply the doctrine of voluntary payment. Factual questions

8   remain regarding knowledge of the Substitution of Trustee Fee, fraud, duress, and

9   compulsion. Accordingly, the court concludes that the voluntary payment doctrine does

10  not require dismissal of Ms. Lewis' breach of contract claim at this stage of the

11  proceedings.

12  **C. Count II - Violation of the Washington State Consumer Protection Act with Respect to the Recording Fee**

13          To state a claim for violation of the CPA, a party must allege: "(1) [an] unfair or

14  deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact;

15  (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman*

16  *Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 532 (Wash. 1986);

17  RCW 19.86.060. Whether particular conduct is an unfair or deceptive act or practice

18  under the CPA is a question of law. *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930

19  P.2d 288, 297 (Wash. 1997); *Dwyer v. J.I. Kislak Mort. Corp.*, 13 P.3d 240, 242 (Wash.

20  Ct. App. 2000). "[A]lthough the Act does not define the term 'deceptive,' a practice is

21  unfair or deceptive if it has the capacity to deceive a substantial portion of the public."

22

ORDER- 12

1    *Dwyer*, 13 P.3d at 242-43 (citing *Nelson v. Nat'l Fund Raising Consultants, Inc.*, 842

2    P.2d 473, 478 (Wash. 1992)).  "Neither intent to deceive nor actual deception is

3    required."  *Id.*  Furthermore, the CPA is to be liberally construed to effectuate its purpose

4    of protecting consumers.  *Indoor Billboard*, 170 P.3d at 21.

5         Chase asserts that Ms. Lewis fails to state a claim for a violation of the CPA with

6    respect to the Recording Fee because she has not alleged (1) an unfair or deceptive act or

7    practice, or (2) causation.  (Mot. at 11-12.)  For the reasons explained below, the court

8    concludes that Ms. Lewis sufficiently alleges an unfair or deceptive act or practice, but

9    that she does not allege facts sufficient to plead causation.  Accordingly, the court grants

10   Chase's motion to dismiss Ms. Lewis' second cause of action, and also grants Ms. Lewis

11   leave to file a second amended complaint that remedies the identified shortcomings.

12   **1.  Unfair or Deceptive Act or Practice**

13        With respect to the first element of a CPA claim, Ms. Lewis alleges that Chase

14   required her and putative class members "to pay recording fees not secured by their

15   Deeds of Trust . . . by including such fees in its loan Payoff Statements delivered to

16   plaintiff and class members."  (Am. Compl. ¶ 31.)  Ms. Lewis further alleges that she and

17   putative class members "were required to pay the recording fees specified by defendant

18   on its Payoff Statements in order for their Deeds of Trust to be reconveyed to them."  (*Id.*

19   ¶ 32.)  As discussed above, the court has interpreted paragraph 23 of the Deed of Trust as

20   authorizing Chase to collect recordation costs associated with reconveyance, and this

21   interpretation does not foreclose Ms. Lewis' claim that the Substitution of Trustee Fee

22

1    was not secured by the Deed of Trust.  Thus, assuming the truth of Ms. Lewis'

2    allegations, the court concludes that she has alleged an unfair or deceptive act or practice.

3    **2.  Causation**

4         Regarding the causation element, the Washington Supreme Court has made clear

5    that "a CPA plaintiff must show that the defendant proximately caused his or her injury

6    by showing that 'but for the defendant's unfair or deceptive practice, the plaintiff would

7    not have suffered an injury.'" *Beyer v. Countrywide Home Loans Servicing LP*, No. C07-

8    1512MJP, 2008 WL 1791506, *9 (W.D. Wash. Apr. 18, 2008) (quoting *Indoor Billboard*,

9    170 P.3d at 20).  "[W]hen the alleged injury is payment of an amount not actually owed,

10   a plaintiff must prove the deceptive billing practice induced the payment to establish

11   causation." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 900 (Wash. 2009).  In

12   other words, Ms. Lewis's amended complaint must contain allegations suggesting that

13   "but for" Chase's alleged deception in the Payoff Statement (i.e., demanding unsecured

14   fees to obtain reconveyance of the Deed of Trust), she would not have paid the unsecured

15   fees. *See id.*

16        Ms. Lewis argues that she sufficiently alleged causation by alleging, "Plaintiff

17   paid the $77 recording fee required by the February 6, 2010 Payoff Statement," and that

18   the only reasonable inference from this statement is that she paid the fee because it was

19   stated as a secured sum whose satisfaction was necessary to obtain reconveyance.  (Resp.

20   at 14 (quoting Am. Compl. ¶ 16).)  The court, however, concludes that the allegation in

21   paragraph 16 of the amended complaint falls short of sufficiently pleading that but for

22   Chase's alleged deceptive act, Ms. Lewis would not have paid the challenged fees.  As

ORDER- 14

1   such, the court dismisses this count of the amended complaint and grants Ms. Lewis leave

2   to file a second amended complaint containing the additional necessary factual

3   allegations.

4   **D.  Count III - Violation of the Washington State Consumer Protection Act with Respect to the Facsimile Fee**

5   
6           As stated above, to state a claim for violation of the CPA, a party must allege: "(1)

7   an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public

8   interest impact; (4) injury to plaintiff in his or her business or property; (5) causation."

9   *Hangman Ridge*, 719 P.2d at 532; RCW 19.86.060.  Chase argues that Ms. Lewis cannot

10  satisfy the first element of her CPA claim for the Facsimile Fee as a matter of law and

11  that her amended complaint does not contain facts sufficient to plead the fourth and fifth

12  elements.  (Mot. at 13-14.)  For the reasons stated below, the court concludes that Ms.

13  Lewis has alleged an unfair or deceptive act or practice but that she has not sufficiently

14  alleged an injury to her business or property, or causation.

15      **1.  Unfair or Deceptive Act or Practice**

16          To satisfy the first element of a CPA claim, the amended complaint alleges in

17  relevant part:

18      Defendant's practice of including facsimile fees as part of the Total
        Amount Owed on its loan Payoff Statements without any explanation or
19      disclaimer that payment of such fees is not necessary to secure release
        and/or reconveyance of borrowers' mortgages or deeds of trust
20      constitutes an unfair and deceptive act and practice . . . .  Defendant's
        inclusion of the facsimile fees as part of the Total Amount Owed on the
21      Payoff Statements has the capacity to deceive reasonable consumers into
        believing that they must pay these fees – that they are, in fact, required to
22      pay these fees – before defendant will release their mortgages or reconvey
        their Deeds of Trust.

(Am. Compl. ¶¶ 34-35.)  Whether a practice or act is unfair or deceptive, that is, whether it has the capacity to deceive a substantial portion of the public, is a question of law. *Leingang*, 930 P.2d at 297; *Dwyer*, 13 P.3d at 242.  "Even accurate information may be deceptive 'if there is a representation, omission or practice that is likely to mislead a reasonable consumer.'"  *Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs.*, 228 P.3d 1260, 1270 (Wash. 2010) (quoting *Panag*, 204 P.3d at 895 (internal quotation omitted)).  The court must "liberally construe the CPA in order to protect the public from inventive attempts to engage in unfair and deceptive business practices."  *Id.* at 898.

Three cases have considered whether loan payoff statements that include unsecured facsimile fees have the capacity to deceive under the CPA.  First, the payoff statement at issue in *Dwyer* stated at the top of the page:  "This statement reflects the amount needed to prepay this mortgage in full."  *Dwyer*, 13 P.3d at 241.  The statement then listed the amounts due, including "Misc Service Chgs," along with other secured sums under the "Balance Due."  *Id.*  The court noted that the purpose of the payoff statement was to inform the plaintiffs of "the sums due to obtain a release of their mortgage."  *Id.* at 243.  Based on this purpose, the court reasoned that it was "reasonable to assume that [the defendant's] response would include only those charges actually required to release the mortgage, *or if other fees appeared, that they would be specifically identified as extraneous charges that need not be paid in order to obtain a release of the prior lien*."  *Id.* (emphasis added).  The court concluded that the payoff statement had the

1   capacity to deceive because:  (1) the statement reflected "the amount needed to prepay"

2   the mortgage in full; (2) the "Misc Service Chgs" were listed in the same column as

3   charges secured by the deed of trust; and (3) the "Misc Service Chgs" were included in

4   the total sum due to pay the mortgage in full.  *Id.*  As such, the payoff statement could

5   lead reasonable consumers to believe that they must pay the "Misc Service Chgs" before

6   the defendant would release the mortgage.  *Id.*

7        In *Davis v. Homecomings Financial*, No. C05-1466 RSL, 2006 WL 2927701

8   (W.D. Wash. Oct. 10, 2006), the payoff statement listed the "Amount to Satisfy Loan

9   Obligation," which did not include the facsimile fee.  *Id.* *2.  Below this amount, the

10  statement listed the facsimile fee, which was included in the "Total as of June 25, 2004."

11  *Id.* *2.  The defendant argued that the inclusion of the facsimile fee as a separation line-

12  item from the secured amounts was not a deceptive act or practice.  *Id.* *5.  The court,

13  relying on *Dwyer*, concluded otherwise, reasoning that the plaintiff had requested the

14  statement to learn the amount due to release her mortgage and that the lender nevertheless

15  included unsecured fees in the total amount due.  *Id.*  The court also noted that the payoff

16  statement did not state that payment of the facsimile fee was not required to release the

17  mortgage.  *Id.*

18        Finally, the payoff statement in *Beyer* listed a "Total Amount Required to Release

19  the Lien" in bold text, which did not include the facsimile fee, and then a "Total Amount

20

21

22

ORDER- 17

1   Due," which did include the facsimile fee.[8]  *Beyer*, 2008 WL 1791506 at *1.  The payoff

2   statement also included a bolded statement explaining that "payment of [the facsimile

3   fee] is NOT a condition for the release or reconveyance of the Security Instrument."  *Id.*

4   at *6.  The court concluded that the payoff statement did not have the capacity to deceive

5   consumers because it twice indicated in bold type—in the calculation of the "Total

6   Amount Required to Release the Lien" and in the explanatory statement—that payment

7   of the facsimile fee was not required to release the lien.  *Id.*

8          With this precedent in mind, the court turns to the instant matter.  Like the

9   plaintiffs in *Dwyer*, *Davis*, and *Beyer*, Ms. Lewis requested the Payoff Statement to learn

10  the sums due to obtain a release of the Deed of Trust.  (*See* Am. Compl. ¶¶ 12-13.)

11  Therefore, applicable here is the *Dwyer* court's conclusion that payoff statements that

12  include unsecured fees should "specifically identif[y] [the unsecured fees] as extraneous

13  charges that need not be paid in order to obtain a release of the prior lien."  *Dwyer*, 13

14  P.3d at 243.  Presumptively, then, payoff statements that include unsecured fees, like the

15  Payoff Statement at issue here, have the capacity to deceive under the CPA unless they

16  specifically identify the unsecured fees as not necessary to obtain a release of lien.  *See*

17  *id.*

18         Chase contends that "[n]othing in the Payoff Statement purports to require

19  Plaintiff to pay the $30 Facsimile Fee before Chase would release the Deed of Trust."

20  (Mot. at 13.)  Chase points out that the Facsimile Fee is included in the "Total Amount

21  _____

22         [8] *Beyer* actually involved two slightly different versions of the same payoff statement—a
    paper copy and an electronic copy.  The court's discussion here refers to the paper copy.

1   Owed Including Service Fees," which is separate and apart from the "Total Amount

2   Secured by Mortgage." (*Id.*)  Chase also highlights that the Payoff Statement indicates

3   that the borrower may suffer consequences for failing to remit the "Total Amount

4   Secured by Mortgage," but says nothing about failure to pay the "Total Amount Owed

5   Including Service Fees." (*Id.*)  For example, the Payoff Statement says:  "Except where

6   prohibited, Chase reserves the right to . . . refuse any funds which are insufficient to pay

7   the Total Amount Secured by the Mortgage." (Payoff Statement.)  The Payoff Statement

8   also says:  "If the payoff remittance is insufficient to pay the Total Amount Secured by

9   the Mortgage, Chase will withdraw funds from the borrower(s) escrow account, if

10  available, to complete such payoff." (*Id.*)

11        Chase's argument, however, turns the *Dwyer* standard on its head by presuming

12  that the inclusion of the Facsimile Fee is not deceptive and then arguing that "[n]othing in

13  the Payoff Statement purports to require Plaintiff to pay the $30 Facsimile Fee before

14  Chase would release the Deed of Trust." (Mot. at 13.)  As discussed above, the court

15  presumes that inclusion of the fee has the capacity to deceive and then looks to see if

16  anything in the Payoff Statement rebuts this presumption.

17        Beginning with this presumption, the court is not persuaded that listing the

18  Facsimile Fee below the "Total Amount Secured by the Mortgage" or outlining

19  consequences for failure to pay the "Total Amount Secured by the Mortgage" (rather than

20  the "Total Amount Owed Including Service Fees") specifically identify the Facsimile Fee

21  as unnecessary to pay off the mortgage in full.  First, unlike the payoff statement in

22  *Beyer*, which did not have the capacity to deceive in part because it specifically identified

1    the "Total Amount Required to Release the Lien," the Payoff Statement only identifies

2    the "Total Amount Secured by the Mortgage."  The court finds it unlikely that a

3    reasonable homeowner would understand the "Total Amount Secured by the Mortgage"

4    to be the total amount required to release the lien.  Second, although a person who

5    carefully read the Payoff Statement in its entirety may infer that he or she need only pay

6    the "Total Amount Secured by the Mortgage" to release the lien, the statements in the

7    Payoff Statement identified by Chase (e.g., that there are consequences for failing to pay

8    the "Total Amount Secured by the Mortgage") do not sufficiently indicate for a

9    reasonable homeowner that the Facsimile Fee need not be paid to release the lien.

10   Accordingly, the court concludes that, as a matter of law, the Payoff Statement has the

11   capacity to deceive a substantial portion of the public.

12        **2.  Injury**

13        Chase next contends that Ms. Lewis's amended complaint fails to allege an injury

14   to her business or property.  (Mot. at 14.)  Chase argues that the amended complaint lacks

15   any allegation that Ms. Lewis did not owe the Facsimile Fee, that she did not agree to pay

16   the Facsimile Fee to receive the Payoff Statement by facsimile, that she did not request

17   receipt of documents by facsimile, that the Facsimile Fee was not disclosed, or that she

18   did not receive the Payoff Statement by facsimile.  (*Id.*)  Ms. Lewis responds that she

19   paid the Facsimile Fee "because Chase demanded it as part of the Total Amount Owed on

20   the Payoff Statement in a manner that made it seem necessary to obtain reconveyance of

21   her property" and was therefore injured by paying the fee.  (Resp. at 19-20.)

22

ORDER- 20

1    The court agrees with Chase that Ms. Lewis has not alleged an injury to her

2    business or property.  Although she may have paid the Facsimile Fee because she

3    believed it necessary to pay off her loan, this alone does not establish an injury to her

4    business or property, particularly given her counsel's admission at oral argument that she

5    agreed to pay the fee.  (12/2/2011 Hrg. Trans. at 24 ("[W]e've accepted for purposes of

6    this case that either Ms. Lewis or her agent did enter into a side agreement, if you will, by

7    use of the telephone, the IVR ordering system to receive a facsimile fee – to receive a

8    copy of the payoff statement by facsimile, agreeing to pay an extra charge for that.").)

9    Accordingly, the court dismisses Ms. Lewis' third cause of action, but because the court

10   cannot definitively say that amendment would be futile, it grants her leave to file a

11   second amended complaint that includes factual allegations of an injury to her business or

12   property.

13        **3.  Causation**

14        Chase also maintains that Ms. Lewis's amended complaint fails to allege that the

15   deceptive act or practice caused an injury to her business or property.  (Mot. at 13.)  Ms.

16   Lewis contends that "[h]ad Chase not misrepresented the nature and necessity for paying

17   the $30 Facsimile Fee, Ms. Lewis would not have paid it, and she would not have been

18   damaged."  (Resp. at 20.)  Ms. Lewis also asserts that "at a minimum, but for the

19   misrepresentation, Ms. Lewis would have had the ability to investigate whether all

20   material terms of the extra fee were properly disclosed and agreed to, and to protest or

21   refuse to pay the fee accordingly."  (*Id.*)

22

1    As explained above, a plaintiff may show causation by showing that "but for the

2    defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."

3    *Beyer*, 2008 WL 1791506, at *9 (quoting *Indoor Billboard*, 170 P.3d at 20).  Assuming

4    Ms. Lewis is able to allege an injury, she must also allege that the deceptive nature of the

5    Payoff Statement induced her to pay the Facsimile Fee.  *See, e.g.*, *Panag*, 204 P.3d at 900

6    ("[W]hen the alleged injury is payment of an amount not actually owed, a plaintiff must

7    prove the deceptive billing practice induced the payment to establish causation."); *Beyer*,

8    2008 WL 1791506, at *9 (discussing allegations sufficient for causation element of CPA

9    claim involving similar facts).  Although Ms. Lewis makes a "but for" argument in her

10   briefing, the amended complaint contains no such allegations.  Accordingly, the court

11   grants her leave to include additional allegations regarding causation in her second

12   amended complaint.

13   **E.  Count IV - Unjust Enrichment**

14   Ms. Lewis alleges in her amended complaint, "By charging plaintiff and the class,

15   and by retaining the excess recording and facsimile fees described herein . . . defendant

16   was unjustly enriched."  (Am. Compl. ¶ 37.)  "Unjust enrichment is the method of

17   recovery for the value of the benefit retained absent any contractual relationship because

18   notions of fairness and justice require it."  *Young v. Young*, 191 P.3d 1258, 1262 (Wash.

19   2008).  The three elements of an unjust enrichment claim are:  (1) a benefit conferred on

20   one party by another; (2) appreciation and knowledge of the benefit by the party

21   receiving it; and (3) acceptance of the benefit under circumstances that make it

22

1   inequitable for the receiving party to retain the benefit without paying its value.  *Dragt v.*

2   *Draft/DeTray, LLC*, 161 P.3d 473, 576 (Wash. Ct. App. 2007).

3          "A party to a valid express contract is bound by the provisions of that contract, and

4   may not disregard the same and bring an action on an implied contract relating to the

5   same matter, in contravention of the express contract."  *MacDonald v. Hayner*, 715 P.2d

6   519, 522 (Wash. Ct. App. 1986) (quoting *Chandler v. Wash. Toll Bridge Auth.*, 137 P.2d

7   97, 103 (Wash. 1943)).  "[W]here the rights of the parties are governed by an express and

8   enforceable contract, the law will not imply another or different contract . . . ." *Chandler*,

9   137 P.2d at 105.  Yet where the conduct of one or more parties to an express contract is

10  removed from the contract's subject matter, Washington courts have allowed recovery for

11  such conduct under unjust enrichment.  *See Pierce Cnty. v. State*, 185 P.3d 594, 618-19

12  (Wash. Ct. App. 2008) (allowing Pierce County to bring a quasi-contract claim for long-

13  term medical care it provided because the express contracts governing mental health care

14  for Pierce residents did not address the county's responsibility for providing such care).

15         Chase contends that Ms. Lewis' unjust enrichment claim fails as a matter of law

16  because the parties' relationship is governed by the Note and Deed of Trust.[9]  (Mot. at

17  15.)  The existence of an express contract, however, does not categorically preclude an

18  unjust enrichment claim.  *See, e.g.*, *Beyer*, 2008 WL 1791506, at *9 - *11 (denying

19  motion to dismiss unjust enrichment claim regarding the collection of facsimile fees even

20  though the litigants were parties to a deed of trust).  Rather, the court must look to the

21  _____

22       [9] Neither party has submitted the Note to the court.

1    contract and determine whether it "sufficiently cover[s] the subject matter of the unjust

2    enrichment claim." *Jankanish v. First Am. Title Ins. Co.*, No. C080147 MJP, 2009 WL

3    779330, *6 (W.D. Wash. 2009).

4        As noted above, Ms. Lewis alleges that Chase was unjustly enriched by retaining

5    the Substitution of Trustee Fee and the Facsimile Fee.  The court concludes that the Deed

6    of Trust sufficiently covers the subject matter of Ms. Lewis' unjust enrichment claim

7    with respect to the Substitution of Trustee Fee.  As the court has previously discussed, the

8    Deed of Trust addresses recordation costs in the context of reconveyance, and there are

9    questions of fact regarding whether Chase was authorized to collect the Substitution of

10   Trustee Fee from Ms. Lewis.  Given these facts, Ms. Lewis cannot simultaneously

11   proceed under breach of contract and unjust enrichment theories.  *See id.* (dismissing

12   unjust enrichment claim for reconveyance fees where contract addressed reconveyance

13   services and plaintiff properly alleged breach of the contract on these same grounds).

14   Accordingly, the court dismisses with prejudice Ms. Lewis' claim that Chase was

15   unjustly enriched by retention of the Substitution of Trustee Fee.

16       In contrast, Ms. Lewis' unjust enrichment claim with respect to the Facsimile Fee

17   is not barred by the existence of the Deed of Trust because that document does not

18   address the payment of such a fee.  *See, e.g.*, *Orser v. Select Portfolio Servicing, Inc.*, No.

19   C05-1507C, 2005 WL 3478126, *3 - *4 (W.D. Wash. Dec. 20, 2005) (denying motion to

20   dismiss unjust enrichment claim where the deed of trust was silent as to the challenged

21   fees); *Pierce Cnty.*, 185 P.3d at 619 ("Because the contracts did not explicitly cover the

22   County's responsibility for long-term care, they do not bar the County's claim based on

1   quasi-contract principles.").  Nevertheless, the court concludes that Ms. Lewis' bare

2   assertion that Chase was unjustly enriched by retaining the Facsimile Fee does not satisfy

3   the pleading requirements of the Federal Rules of Civil Procedure.  *See Iqbal*, 129 S. Ct.

4   at 1949 ("[T]he pleading standard Rule 8 announces does not require detailed factual

5   allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-

6   me accusation." (internal quotation and citation omitted)).  The court, therefore,

7   dismisses Ms. Lewis' unjust enrichment claim for the Facsimile Fee.

8          Furthermore, the court declines to grant Ms. Lewis leave to amend.  "[A] party is

9   not entitled to an opportunity to amend his complaint if any potential amendment would

10  be futile." *Mirmehdi v. United States*, --- F.3d ----, 2011 WL 5222884, *6 (9th Cir. Nov.

11  3, 2011).  Here, amendment would be futile because Ms. Lewis's counsel admitted at oral

12  argument that she asked to receive the Payoff Statement via facsimile and agreed to pay

13  the Facsimile Fee.  (12/2/2011 Hrg. Trans. at 24 ("[W]e've accepted for purposes of this

14  case that either Ms. Lewis or her agent did enter into a side agreement . . . to receive a

15  copy of the payoff statement by facsimile, agreeing to pay an extra charge for that.").)

16  Given this admission, Ms. Lewis would be unable to allege facts establishing that

17  Chase's retention of the Facsimile Fee was unjust, making amendment futile.  *See Davis*,

18  2006 WL 2927701, at *5 (granting summary judgment in favor of defendant on unjust

19  enrichment claim involving a facsimile fee where plaintiff's agent requested to receive a

20  loan payoff statement via facsimile, defendant sent the payoff statement via facsimile,

21  plaintiff benefited from receiving the payoff statement in an expedited manner, and there

22  was no evidence that the amount of the fee was unreasonable).

1    In sum, the court dismisses with prejudice the entirely of Ms. Lewis' unjust

2  enrichment claim.

3                          **III.    CONCLUSION**

4    For the foregoing reasons, the court GRANTS in part and DENIES in part Chase's

5  motion to dismiss (Dkt. # 26).  The court GRANTS Ms. Lewis leave to file a second

6  amended complaint consistent with this order.

7    Dated this 12th day of December, 2011.

8

9

10  JAMES L. ROBART
    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 26